John V. KELLY

v.

JOHNS–MANVILLE CORP., et al.

Civ. A. No. 81–5241.

United States District Court,
E.D. Pennsylvania.

Aug. 7, 1984.

Joni J. Berner, Maryann Q. Modesti, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for plaintiff.

Diana S. Donaldson, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for National Gypsum.

John M. Phelan, Phillips & Phelan, Philadelphia, Pa., for US Gypsum.

Stewart C. Crawford, Stewart Crawford Associates, Swarthmore, Pa., for Delaware Insulation.

Richard J. Tanker, Prewit Associates, Philadelphia, Pa., for Porter Hayden Co.

Joseph P. Ryan, Curran, Mylotte, David & Fitzpatrick, Philadelphia, Pa., for Pittsburgh-Corning Corp.

## OPINION

LOUIS H. POLLAK, District Judge.

Plaintiff commenced this action against several manufacturers and distributors of asbestos products on December 21, 1981. Plaintiff alleges that defendants are liable to him for injuries that he sustained as a result of his exposure to asbestos over his working life as an insulator. Mr. Kelly initially claimed only that he had contracted asbestosis. He now claims that he suffers from epidermoid carcinoma caused by exposure to asbestos fibers. Plaintiff's counsel represented to the court at a conference on July 5, 1984, that at that time plaintiff had settled or voluntarily dismissed his claims against all but five defendants: Pittsburgh-Corning Corporation, Delaware Insulation Company, Porter Hayden Company, National Gypsum Company, and United States Gypsum Company. Since July 5, counsel have represented to the court that plaintiff has settled his claim against Pittsburgh-Corning, leaving only four defendants.[1]

This court has adopted a procedure under which asbestos cases are initially assigned to one judge and then reassigned to another judge for trial. This case was originally assigned to Judge Troutman. It was reassigned to me for a trial which was to commence on July 9, 1984. During the first week of July, however, it became painfully clear that this matter was a long way from trial readiness.

In the weeks preceding trial, the parties filed a flurry of motions. Surprisingly, two and one-half years after the commencement of this action, the parties had not resolved their discovery disputes to the point of satisfying each other as to the sufficiency of answers to interrogatories. On June 15, 1984, United States Gypsum filed a motion to compel plaintiff to make more specific answers to its interrogatories. Plaintiff responded to that motion on June 28 and, at the same time, filed his own motion to compel United States Gypsum to answer interrogatories. United States Gypsum filed its response to plaintiff's motion to compel on July 5 and also filed a supplemental memorandum in support of its own motion to compel at the same time. Meanwhile, plaintiff filed a second motion to compel answers to inter-

---

1. At the July 5 conference, counsel for Pittsburgh-Corning and plaintiff represented that other attorneys in their respective firms were in the process of negotiating a joint settlement of several asbestos actions brought by several different plaintiffs all represented by Mr. Kelly's counsel's law firm. These negotiations apparently resulted in such a settlement. Generally, counsel representing several separate plaintiffs with different claims against a single defendant will not seek to settle all of the claims together. *See* DR 5–106(A). I trust that the settlement reached here was reached with the full informed consent of all plaintiffs as required by the Code of Professional Responsibility.

The docket does not appear to reflect any of the reported settlements. Evidently the parties have not adopted the practice of filing stipulations or requesting the entry of Orders pursuant to Local Rule 23(b). The docket does reflect the severance of defendants who have filed petitions in bankruptcy. Order of Judge Troutman (March 1, 1984). That Order does not, however, specify which defendants have been severed. Because of this procedural confusion, I will simply accept counsel's representations that this case now consists only of plaintiff's claims against four defendants and includes no third-party claims.

rogatories on July 6, this time addressed to National Gypsum Company. Plaintiff had served National Gypsum with this motion before filing it with this court. National Gypsum responded to plaintiff's July 6 motion on July 5. Plaintiff filed a supplemental memorandum replying to National Gypsum's response on July 16. Thus, on the scheduled day of trial, the court would have faced three outstanding discovery motions.

It was not merely discovery disputes that awaited resolution during the first week of July. On June 22, National Gypsum filed a motion for summary judgment based principally upon plaintiff's inability to adduce evidence that he was exposed to National Gypsum products.[2] Plaintiff provided the court with a response to that motion on July 5 and filed the response on July 6.[3]

On June 28, Porter Hayden filed a motion for summary judgment principally based upon plaintiff's failure to adduce any evidence of exposure to products distributed by Porter Hayden during any period when plaintiff was not employed by Porter Hayden. Porter Hayden asserted the New Jersey workers' compensation statute as a bar to plaintiff's recovery. See N.J.Stat. Ann. 34:15–8 (West Supp.1984). Plaintiff responded to this motion on July 5, filing the response on July 6.

On June 29, National Gypsum filed a second motion for summary judgment based upon the statute of limitations. All other defendants have since joined in this motion. Plaintiff responded to National Gypsum's second motion on July 5, filing the response on July 6.

On July 5, Delaware Insulation Company filed a motion for summary judgment asserting the Pennsylvania workers' compensation statute as a defense to plaintiff's claim. See Pa.Stat.Ann. tit. 77, § 481 (Purdon Supp.1983). Plaintiff has never responded to Delaware Insulation's motion.

Finally, on July 6, United States Gypsum filed a motion for summary judgment based upon plaintiff's inability to adduce evidence of his exposure to United States Gypsum's products. Plaintiff responded to this motion on July 16.

Obviously, on July 3, this court was not aware of all of the motions that the parties would file. However, by that day I faced an unjoined motion to compel answers from United States Gypsum. Moreover, I faced two unjoined motions for summary judgment filed by National Gypsum and one filed by Porter Hayden. I therefore decided to schedule oral argument on the pending motions for July 5 at 2:00 p.m.

At 1:58 p.m. on July 5 my law clerk first received a copy of Delaware Insulation's motion for summary judgment. At 2:12 p.m. counsel for plaintiff arrived with responses to National Gypsum's motions for summary judgment and to Porter Hayden's motion, and with an additional motion to compel answers to interrogatories from National Gypsum. I thereupon decided to forego oral argument on the pending motions and to engage the parties in settlement discussions. These discussions proved fruitless, as did further discussions that afternoon conducted by Judge Weiner. Accordingly, on Friday, July 6, I asked my law clerk to inform counsel that I would postpone trial and that they could have until July 12 to supplement any of their submissions. Following this chamber's usual practice, my law clerk called counsel for one party, in this case National Gypsum, and advised her of the new timetable and requested her to inform all other coun-

---

**2.** At the same time, National Gypsum submitted to the Clerk's Office a motion for an expedited response schedule on its motion for summary judgment. The Clerk's Office apparently supposed that this motion was simply a copy of the motion for summary judgment, and did not docket or file it. Consequently, this motion did not come to my attention until it had become moot.

**3.** Counsel for National Gypsum certified that she hand-delivered National Gypsum's motion for summary judgment to plaintiff's counsel on June 22. Under our Local Rules, plaintiff's response was consequently due ten days later, on July 2. E.D.Pa.R.Civ.P. 20(c). I will, nevertheless, treat plaintiff's response to this motion as if timely filed.

sel. National Gypsum's counsel apparently misunderstood this request and failed to inform plaintiff's counsel of the July 12 deadline for supplemental submissions. Plaintiff's counsel did not learn of this deadline until July 11, when she requested an extension until Monday, July 16, which I granted.

On July 12, Porter Hayden, United States Gypsum, and National Gypsum filed supplemental memoranda. On July 16, plaintiff filed four supplemental memoranda addressed to various of the pending motions. This Memorandum and the accompanying Order resolve the pending motions.

### 1. *Choice of Law*

The parties disagree over which state's substantive law should govern this diversity action. Plaintiff takes the position that New Jersey law governs all claims in this case and all defenses except Delaware Insulation's defense based upon the Pennsylvania Workmen's Compensation Act. On the other hand, all defendants except Porter Hayden take the position that Pennsylvania law governs plaintiff's claims and all defenses. Porter Hayden takes what would seem to be somewhat inconsistent positions. On the other hand, Porter Hayden contends that New Jersey substantive law governs plaintiff's claim against it, but on the other hand Porter Hayden has adopted National Gypsum's motion for summary judgment on the statute of limitations ground, a motion which argues for the application of Pennsylvania substantive law.

Plaintiff cites no authority for the application of New Jersey law other than *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1940), and *Griffith v. United Airlines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964). *Klaxon*, of course, merely requires a district court in a diversity action to apply the choice of law rule of the state in which it

sits. *Griffith* states, in general fashion, the Pennsylvania choice of law rule. *Griffith* announced the Pennsylvania Supreme Court's abandonment of "the strict lex loci delicti rule ... in favor of a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." 416 Pa. at 21, 203 A.2d at 806 (footnote omitted). This "more flexible rule" combines Professor Currie's "interest analysis" and the approach taken by the Restatement (Second) of Conflict of Laws. *Brown v. Santonella*, Civil Action No. 83–4016, slip op. at 4–5 (E.D.Pa. May 22, 1984).

As framed by counsel, plaintiff's argument as to why *Griffith* mandates the application of New Jersey law is unenlightening:

> Plaintiff, a New Jersey resident alleges exposure to asbestos products supplied by the remaining defendants while employed at job locations in New Jersey. There are sufficient [sic] connections with Pennsylvania since the release of other defendants to this action. Thus, the substantive law of the State of New Jersey is to be applied.

Plaintiff's Supplemental Memorandum of Law in Opposition to National Gypsum Company's Motion for Summary Judgment Based on the Statute of Limitations at 2.

I read this argument as a contention that both the Second Restatement approach and "interest analysis" dictate the application of New Jersey substantive law to this action. Plaintiff asserts that he is a resident and citizen of New Jersey. He claims that all of his exposure to the remaining defendants' products occurred in New Jersey.[4] Plaintiff's complaint also alleges that none of the remaining defendants is a Pennsylvania corporation nor does any of the remaining defendants have a principal place of business in Pennsylvania.

Because none of the remaining defendants is a Pennsylvania citizen, because plaintiff is a New Jersey citizen and resi-

---

**4.** This contention seems inconsistent with plaintiff's employment with Delaware Insulation in Marcus Hook, Pennsylvania. Because, as ex- plained below, I will grant Delaware Insulation's motion for summary judgment on other grounds, this inconsistency is not pertinent.

dent, and because all of plaintiff's exposures to the remaining defendants' products occurred in New Jersey, New Jersey law should apply to plaintiff's claims against the remaining defendants if those claims are separable from plaintiff's claims against the other defendants. Pennsylvania has no clear interest in the application of its law to a tort committed outside Pennsylvania by nonPennsylvania residents which caused injury to a nonPennsylvania resident. Moreover, Pennsylvania has no significant relationship to the injury caused to Mr. Kelly by the remaining defendants within the meaning of the Second Restatement.

This analysis is complicated, however, by the question whether a Pennsylvania court would apply Pennsylvania's choice of law rules separately to plaintiff's claim against each defendant. Plaintiff's injury is not easily divisible. Mr. Kelly has allegedly suffered two diseases as the result of a lifetime of exposure to asbestos in New Jersey, Pennsylvania, and other states.[5] A Pennsylvania court applying Pennsylvania's choice of law rule to plaintiff's claim on the basis of the totality of his exposures to asbestos might conceivably opt for Pennsylvania substantive law.[6]

It appears, however, that the Court of Common Pleas for Philadelphia County has taken the position that in a multi-defendant asbestos case, the plaintiff's separate claims are to be treated as discrete causes of action. This is the lesson to be learned from that court's action in severing all asbestos claims against defendants petitioning under the Bankruptcy Act. *See Matthews v. Johns-Manville Corp.*, 307 Pa. Super. 300, 453 A.2d 362 (1982) (quashing appeal). Our court has followed that lead. *See* Order of Judge Troutman (March 2,

1984); *see also Gold v. Johns-Manville Corp.*, 723 F.2d 1068 (3d Cir.1983) (dismissing appeal).

■ The separation of one defendant, or set of defendants, from the rest of an asbestos action shows that an asbestos claim does not form an indivisible whole. Therefore, the claims presented here relate only to the exposure of plaintiff in New Jersey to asbestos products manufactured or distributed outside of Pennsylvania by the four remaining defendants, none of which has its principal place of business in Pennsylvania. Accordingly, it would seem that a Pennsylvania court would apply New Jersey law to plaintiff's claims against each of the four remaining defendants.

### 2. Statute of Limitations

#### a. Applicable Standards

National Gypsum has moved for summary judgment on the ground that this action is barred by Pennsylvania's two-year statute of limitations for personal injury actions, 42 Pa.Cons.Stat.Ann. § 5524 (Purdon Supp.1983). In the alternative, National Gypsum takes the position that this action would similarly be barred by New Jersey's two-year statute of limitations for like actions, N.J.Stat.Ann. 2A:14–2 (West 1952). All other remaining defendants have joined in National Gypsum's motion.

■ Both Pennsylvania and New Jersey have adopted the "discovery rule" for the beginning of the limitation period. In either state, the limitation period runs from the time that "the plaintiff has discovered his injury, or, in the exercise of reasonable diligence, should have discovered his injury." *Cathcart v. Keene Industrial Insulation*, —— Pa.Super. ——, 471 A.2d 493,

---

**5.** Plaintiff acknowledges that he was exposed to asbestos in Pennsylvania—he simply claims that his exposure in Pennsylvania was to products manufactured by defendants other than the remaining four defendants. Moreover, plaintiff's complaint alleges that all of the remaining defendants do business in Pennsylvania and, indeed, plaintiff predicated venue in this jurisdiction upon an allegation that his claim arose here.

**6.** Plaintiff has not cited, and this court has not located, a Pennsylvania asbestos case which applied law other than the law of Pennsylvania. This may be the case, however, because venue rules would generally preclude a foreign plaintiff from bringing suit in a Pennsylvania court against a foreign corporation on the basis of a foreign exposure to asbestos.

500 (1984) (asbestos case); *accord Jarusewicz v. Johns-Manville Products Corp.*, 188 N.J.Super. 638, 458 A.2d 156, 158 (Law Div.1983) (asbestos case).

■ The difference between the two states' rules lies in their application of the limitation bar. "[I]n Pennsylvania a plaintiff's claims for *all* injuries arising out of the same tortious conduct of a defendant must be brought within two years of the time that the plaintiff knows, or in the exercise of reasonable diligence should know, of his initial injury and that the injury was caused by someone's wrongful conduct." *Cathcart*, 471 A.2d at 507 (emphasis in original). Under this rule, if plaintiff discovers that he has asbestosis more than two years before he commences an action and then later develops cancer which he attributes to exposure to asbestos, *both* plaintiff's asbestosis claim and his cancer claim are barred. On the other hand, our Court of Appeals has held that New Jersey follows the opposite rule, precluding the asbestosis but admitting the cancer claim. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 574 (3d Cir.1976). Since the decision in *Goodman,* no reported opinion of a New Jersey court has questioned *Goodman's* holding.

■ Because I have held that New Jersey substantive law applies to plaintiff's claims against the remaining defendants, New Jersey's definitions of those claims for the purpose of applying its statute of limitations apply as well. Thus, *Goodman,* and not *Cathcart,* provides the rule in this case.[7]

■ As discussed more fully below, defendants contend that Mr. Kelly, in the exercise of reasonable diligence, should have known of his asbestosis more than two years before he commenced this action on December 21, 1981. Plaintiff, however, asserts claims for two allegedly asbestos-

related diseases: asbestosis and epidermoid carcinoma. Defendants do not contend that Mr. Kelly should have known of his cancer's relation to asbestos exposure more than two years before Mr. Kelly commenced this action. Accordingly, under New Jersey law, Mr. Kelly's cancer claim cannot be barred by the statute of limitations.

In support of their claim that Mr. Kelly's asbestosis claim is barred by the statute of limitations, defendants adduce two forms of evidence. The first is a letter from Jeffrey A. April to Dr. Robert L. Krasney dated October 15, 1975. The second is plaintiff's deposition testimony of July 2, 1984. For reasons elaborated below, Mr. April's letter does not support defendants' contentions. However, Mr. Kelly's deposition testimony could not leave a reasonable jury in doubt that Mr. Kelly, in the exercise of reasonable diligence, should have known of his injury from exposure to asbestos in 1975 and that Mr. Kelly knew in 1975 that his injury was actionable.

### b. *April Letter*

Jeffrey April, who plaintiff claims was not an attorney, worked for an Atlantic City law firm that Mr. Kelly had consulted concerning his divorce. Kelly Deposition at 196.[8] Dr. Krasney, now deceased, was an internist at the Hospital of the University of Pennsylvania who treated Mr. Kelly for heart ailments. Kelly Deposition at 197. National Gypsum has submitted a letter from Mr. April to Dr. Krasney which reads as follows:

October 15, 1975

Dr. Robert L. Krasney
4127 Atlantic Ave.
Atlantic City, NJ

John V. Kelly

Dear Dr. Krasney:

We represent John D. [sic] Kelly, who was treated by you approximately three

---

7. While Pennsylvania law defines plaintiff's claims for purposes of applying Pennsylvania's choice of law rule, New Jersey law defines those claims for the distinct purpose of applying New Jersey's statute of limitations.

8. No party submitted a full text of Mr. Kelly's July 2, 1984 deposition. However, upon my request, plaintiff submitted a full transcript which I have filed of record in this action.

months ago and in the course of x-raying John, you discovered what is known as White Lung or Asbestosis.

Mr. Kelly has informed us that you told him that the Asbestosis is job-induced, because of his work with Asbestos. Please send to us a report on John's condition as to the Asbestosis. If it is possible at this time, please inform us whether the Asbestosis constitutes a permanent partial disability and if it does, what the precentage [sic] would be. Also, what the progression of the Asbestosis is and whether or not it has at least abated, would be greatly appreciated.

Enclosed is an Authorization for this report, executed by Mr. Kelly. If there is any charge for this, kindly notify us and a check will be issued.

Thank you for your attention in this matter.

> Kindest personal regards,
> /s/ Jeffrey A. April
> Jeffrey A. April, for
> GOLDSMITH, LAND
> & FINIFTER

JAA:db

cc: Mr. Kelly

Supplemental Memorandum of Defendant National Gypsum, exh. A

■ Defendants offer this letter for two purposes. First, the letter asserts that Mr. Kelly informed Mr. April that Dr. Krasney had told Mr. Kelly that Mr. Kelly's x-rays showed job-induced asbestosis. Second, the letter shows that Mr. Kelly was to have received a copy; this copy would have given Mr. Kelly notice of the matters asserted in the letter.

Federal Rule of Civil Procedure 56(e) permits a party to support a motion for summary judgment with affidavits "made on personal knowledge [which] shall set forth such facts as would be admissible in evidence [and which] shall show affirmatively that the affiant is competent to testify to the matters stated therein." Mr. April's

letter does not qualify as an affidavit. Moreover, defendants have not authenticated Mr. April's letter with Mr. April's affidavit or some substitute affidavit.

■ Plaintiff has not, however, challenged the authenticity of Mr. April's letter. Treating Mr. April's letter as if Mr. April had provided defendants with an affidavit authenticating the letter, Mr. April's letter is still not admissible to show that Mr. Kelly stated that Dr. Krasney had told him that Dr. Krasney had discovered asbestosis in Mr. Kelly's x-rays. The contents of the letter constitute an out-of-court statement by Mr. April offered for the truth of the matter asserted: what Mr. Kelly told Mr. April. The contents of the letter are therefore classic hearsay not within any exception.[9] Accordingly, defendants may not offer Mr. April's letter for its first purpose; Mr. April's letter does not show that Mr. Kelly told Mr. April that Dr. Krasney had found traces of asbestosis in Mr. Kelly's x-rays.

■ For purposes of this motion for summary judgment, I cannot consider Mr. April's letter's "cc: Mr. Kelly" as evidence that Mr. Kelly in fact received a copy. Not only is this also hearsay, but Mr. Kelly denied seeing the letter until a few days before his July 2, 1984, deposition: "I seen this letter for the first time the other day. I never seen it before." Kelly Deposition at 198. At the very most, a material issue of fact exists as to whether Mr. Kelly received a copy of Mr. April's letter.

#### c. *Kelly Deposition*

Mr. Kelly's statements at his deposition, however, would not permit a reasonable jury to conclude that Mr. Kelly should not in the exercise of reasonable diligence have known that he suffered from asbestosis in 1975. Mr. Ryan, counsel for Pittsburgh-Corning, interrogated Mr. Kelly as follows:

---

**9.** Mr. April could, however, testify from personal knowledge as to what Mr. Kelly said. If Mr. Kelly said what Mr. April's letter represents that Mr. Kelly said, Mr. Kelly's statements show no-

tice and are not offered for their truth. Moreover, Mr. Kelly's statements are not hearsay because he is a party. Fed.R.Evid. 801(d)(2).

Q. Did Doctor Krasney ever tell you you had any problems with your lungs?

A. He suspected it. He told me one time. He suspected I had a problem there.

Q. Did he tell you what he suspected?

A. He said, there is a probability you might have a problem in regards to your work.

Q. Meaning, what?

A. That's it.

Q. Meaning the salt air at the shore?

A. I'm talking about working with asbestos.

Q. He told you he was suspicious, and there was a probability you had a problem with your work; meaning your work with asbestos; is that what he told you?

A. That was his suspicion.

Q. When did he tell you that?

A. I don't know, but I think it was quite a few years ago.

Q. Ballpark. 1975?

A. Around that.

Kelly Deposition at 192.

This testimony unequivocally shows that in 1975 or thereabouts plaintiff understood his physician to suspect that plaintiff suffered from a lung problem arising from occupational exposure to asbestos. In addition, at about that time Mr. Kelly understood that this lung problem might have legal consequences.

BY MR. RYAN:

Q. ... Do you remember informing your attorney that your doctor told you that the asbestosis was job induced, because of your work with asbestos?

A. I never informed the attorney that. *I told him to investigate.*

Kelly Deposition at 199 (emphasis added).

■ Mr. Kelly contends that he had no reason to know of his asbestos-related injury until 1980 when he finally received a conclusive diagnosis of asbestosis. He suggests that "reasonable diligence" did not require him to have had Dr. Krasney, or some other physician, conduct a more careful study of his lungs in 1975, because Mr. Kelly claims that he had chest x-rays taken at several job-sites during the period following Dr. Krasney's development of a "suspicion," and none of those x-rays showed asbestosis. Mr. Kelly's testimony does not, however, support this contention. He can only testify that none of his employers informed him that x-rays taken for a different purpose showed traces of asbestosis.

BY MR. RYAN:

Q. At that time [1975], did you take any further steps?

A. Oh, yeah.

Q. What did you do?

A. I had more x-rays taken.

Q. By whom?

A. As a matter of fact, I was x-rayed on every one of these jobs that I went on for Porter-Hayden; that I went on for a nuclear plant. It is a requisite to get x-rays. And they always come up. They never found anything.

They were all negative.

\* \* \* \* \* \*

There is a firm that goes in there with trailers and x-ray equipment. Before you can go into a reactor, you have to take the test.

[BY MR. TANKER:]

Q. Do you know why they wanted to take those x-rays?

A. No. I imagine it was just a general—

Q. Do you know?

A. No.

\* \* \* \* \* \*

[BY MS. DONALDSON:]

Q. In the screening examination for those nuclear jobs, how were you advised of the results of the x-ray?

A. You didn't go to work if they found anything. It was as simple as that.

\* \* \* \* \* \*

Q. Are you ever given the results of your medical examination?

A. Only if something shows up and they won't permit you to go onto the job site.

Q. Did something ever show up for you?

A. No.

Q. You never received the results of any of the medical examinations done at the nuclear sites?

A. But other people have been turned down for other reasons physically.

Q. Did you hear whether any people had been turned down for positive x-ray results?

A. No.

Kelly Deposition at 194–195, 229, 232–234.

No reasonable jury could conclude that Mr. Kelly's reliance upon x-rays taken at Forked River nuclear powerplant constituted the exercise of "reasonable diligence." Mr. Kelly did not know at the time that those examining his x-rays were looking for signs of asbestosis. He had no reason to believe that any trace of asbestosis at all would have disqualified him from work; he knew of no one who had been so disqualified. Therefore, the fact that Mr. Kelly was not disqualified from the employment opportunities for which he was x-rayed could not be found to have erased his 1975 knowledge that Dr. Krasney suspected Mr. Kelly suffered from asbestosis caused by occupational exposure to asbestos.

■ This leads to the conclusion that Mr. Kelly's asbestosis claim is barred by the New Jersey Statute of Limitations. His cancer claim is not so barred. In the exercise of reasonable diligence, Mr. Kelly would have known that he had asbestosis more than two years before he commenced this action. However, Mr. Kelly continued to work past 1975. Mr. Kelly worked until some time in 1980. Mr. Kelly alleges that he was exposed to defendants' asbestos products between December 21, 1979 and December 21, 1981, the date that he commenced this action. Any claim based upon an exposure after December 21, 1979, cannot be time-barred. Therefore, Mr. Kelly's

asbestosis claim is time-barred except for claims arising out of his exposure to asbestos after December 21, 1979. His cancer claim is not barred.

### 3. Claim Against Delaware Insulation

Plaintiff alleges that Delaware Insulation distributed asbestos products to his various work places and that he was exposed to Delaware Insulation products when he worked for Delaware Insulation in Marcus Hook, Pennsylvania during 1963. Delaware Insulation has moved for summary judgment on the ground that plaintiff can adduce no evidence that Delaware Insulation supplied any asbestos products to any site where plaintiff worked except for the Marcus Hook site. Delaware Insulation further contends that the Pennsylvania Workmen's Compensation Act bars plaintiff's claim based upon exposure to asbestos products at the Marcus Hook site. Despite an extended opportunity to do so, plaintiff has not responded to Delaware Insulation's motion. I may therefore treat Delaware Insulation's motion as uncontested. E.D.Pa.R.Civ.P. 20(c).

■ Delaware Insulation has submitted an affidavit of Gregory W. Stagliano, its Chairman of the Board. Mr. Stagliano avers that Delaware Insulation did not supply any asbestos products to any employer or work site mentioned by plaintiff in his answers to interrogatories other than to itself at the Marcus Hook site. In the face of such an affidavit, plaintiff may not rest on mere allegations. Fed.R.Civ.P. 56(e). Plaintiff has not responded to Delaware Insulation's motion on this ground. Therefore, Delaware Insulation is entitled to summary judgment on any claims against it not arising out of plaintiff's employment for Delaware Insulation at Marcus Hook.

■ A Pennsylvania court will apply the Pennsylvania Workmen's Compensation Act to an employment relationship in Pennsylvania. The Workmen's Compensation Act precludes tort suits by an employee against his employer for injuries incurred in the course of his employment.

Pa.Stat.Ann. tit. 77, § 481 (Purdon Supp. 1983). Asbestos-related disease is such an injury. Pa.Stat.Ann. tit. 77, § 411(2) (Purdon Supp.1983). Therefore, plaintiff's claim against Delaware Insulation based upon exposure in the course of his employment with Delaware Insulation at Marcus Hook is barred.

For the foregoing reasons, the accompanying Order grants summary judgment for Delaware Insulation Company on all of plaintiff's claims against it.[10]

### 4. Claim Against National Gypsum

National Gypsum manufactures certain products which contain asbestos. Plaintiff alleges that he has been exposed to National Gypsum products at various jobs in New Jersey. But National Gypsum has moved for summary judgment on the ground that plaintiff can adduce no evidence that he was exposed to a National Gypsum product. In support of this motion, National Gypsum has supplied the affidavit of Assistant Controller Robert E. Oberkircher. Mr. Oberkircher avers that National Gypsum supplied no asbestos insulation products to any of plaintiff's employers during any of the periods that plaintiff worked for them. Moreover, Mr. Oberkircher avers that National Gypsum does not manufacture certain products identified by Mr. Kelly in his answers to interrogatories.

Mr. Kelly responds that he has identified products of certain generic types manufactured by National Gypsum which Mr. Kelly claims that he was exposed to. Plaintiff has also moved to compel more specific answers to interrogatories propounded to National Gypsum. Plaintiff contends that

**10.** Delaware Insulation also moved for summary judgment on all cross-claims. Judge Weiner has already denied all cross-claims in all asbestos cases in this district. Order of Judge Weiner (February 22, 1984).

**11.** In accordance with Local Rule of Civil Procedure 24(f), plaintiff's counsel have certified that the parties, after reasonable efforts, have been unable to resolve this discovery dispute. Local Rule 24(f) is a critical component of the management of litigation in this court. *Crown Cork & Seal Co. v. Chemed Corp.*, 101 F.R.D. 105

more specific answers would permit him to make a more specific response to National Gypsum's motion for summary judgment.

#### a. *Motion To Compel*

█ Plaintiff Kelly propounded a standard set of interrogatories to National Gypsum on January 24, 1984. National Gypsum served answers and *objections* to these interrogatories on June 5, 1984. Plaintiff's objections to National Gypsum's response focus, however, not on its incontestable untimeliness but on its incompleteness. Mr. Kelly seeks an order compelling National Gypsum to identify all sales of asbestos-containing products within a fifty-mile radius of any of plaintiff's workplaces during the periods that he worked at each site. National Gypsum has provided that information with regard to plaintiff's employers, but not with regard to any other purchasers within fifty miles of plaintiff's workplaces.[11]

National Gypsum's objection to answering plaintiff's interrogatories in any further detail is justified. Plaintiff's request would require National Gypsum to identify each of its customers who do work within fifty miles of each of several places where plaintiff worked. National Gypsum would then have to search its files and identify sales of asbestos products—as distinct from all of National Gypsum's other products—during the appropriate time periods. Plaintiff makes this request even though he has no information linking any of these other National Gypsum customers with his work sites. Without any such linkage, plaintiff's interrogatories are unduly burdensome. *Cf. Hayes v. National Gypsum*

(E.D.Pa.1984). Given the volume and standardization of asbestos litigation in this court and in the Court of Common Pleas, and given the large number of cases handled by both plaintiff's counsel's firm and National Gypsum's counsel's firm, it somewhat strains credibility to suppose that counsel have not encountered precisely this problem before; and for this reason it is somewhat hard to believe that counsel have devoted much serious effort to resolution of this dispute. But I will accept plaintiff's counsel's certification, as I have no contrary evidence.

*Co.,* Civil Action No. 82–5263 (E.D.Pa. March 22, 1984) (limiting discovery to a single product identified by plaintiff). I will therefore deny plaintiff's motion to compel more detailed answers to these interrogatories.[12]

### b. *Motion for Summary Judgment*

■ Plaintiff has adduced no direct evidence that he was exposed to National Gypsum asbestos products. He has, however, identified certain types of products manufactured by National Gypsum by generic name. Plaintiff contends that this generic identification suffices to create a material issue of fact in the face of the Oberkircher affidavit. I disagree.

■ Although this is asbestos litigation, it is litigation in a federal court nonetheless. In responding to a motion for summary judgment, plaintiff must present evidence which would allow a jury to find that it is more likely than not that plaintiff was exposed to defendant's products. Plaintiff has presented no evidence from which a jury could draw that conclusion. A jury cannot conclude from plaintiff's identification of generic types of products alone that he has been exposed to a particular manufacturer's products. Permitting a jury to reach this conclusion is analogous to permitting a jury to conclude that because plaintiff was hit by a car, he was hit by a car manufactured by General Motors. Accordingly, the accompanying Order grants National Gypsum's motion for summary judgment.

### 5. *Claim Against United States Gypsum*

United States Gypsum, like National Gypsum, manufactures certain products which contain asbestos. Plaintiff alleges that he has been exposed to these products at work, which exposure caused his asbestosis and his cancer. United States Gypsum has moved for summary judgment on the ground that plaintiff can adduce no evidence sufficient to allow a jury to con-

clude that plaintiff has been exposed to United States Gypsum's asbestos products.

Plaintiff has responded to this motion in two ways. First, plaintiff avers that he was exposed to a product known as "Red Top" manufactured by United States Gypsum. Plaintiff did not personally work with this product; it was used by plasterers. *See* Plaintiff's Answers to Defendant United States Gypsum Company's Product Identification Interrogatories, answer 2. Second, plaintiff objects that United States Gypsum's motion is premature because United States Gypsum has not responded in full to plaintiff's interrogatories.

United States Gypsum has refused to answer plaintiff's interrogatories until plaintiff specifically identifies particular products to which he was exposed and places where he was exposed. United States Gypsum has consequently moved to compel more detailed answers to its interrogatories. Plaintiff, on the other hand, has moved to compel United States Gypsum's answers to plaintiff's interrogatories.

### a. *Motion to Compel*

Plaintiff has served on United States Gypsum the same interrogatories he served on National Gypsum. In the previous section of this Opinion I determined that certain of these interrogatories were unduly burdensome to National Gypsum and therefore answers would not be compelled. The same holds true for United States Gypsum. However, there are some proper interrogatories to which National Gypsum responded but United States Gypsum did not. In particular, United States Gypsum has not identified the asbestos-containing products that it sold to the entities identified by plaintiff at the times that plaintiff worked at particular sites. United States Gypsum takes the position that it has no obligation to do so until plaintiff identifies an asbestos product manufactured by United States Gypsum to which he was exposed.

---

**12.** Plaintiff has also moved to compel identification of certain witnesses. In view of my dispo-

sition of National Gypsum's motion for summary judgment, this motion to compel is moot.

Plaintiff has identified "Red Top" plaster and cement. To be sure, a small proportion of "Red Top" may have contained asbestos. However, United States Gypsum has an obligation to provide plaintiff with information concerning sales of asbestos-containing "Red Top" to plaintiff's employers (or other entities identified by plaintiff) who provided materials to the sites at which plaintiff worked during the period that he worked there. Accordingly, the accompanying Order grants plaintiff's motion to compel in part.

Defendant's motion to compel is, frankly, mystifying. Defendant seeks to compel plaintiff to provide information that plaintiff claims he does not have. Plaintiff admits that he cannot identify any plasters or cements manufactured by United States Gypsum more clearly than to state that they had the "Red Top" brand name. Moreover, because plaintiff did not work with these products, plaintiff admits that he cannot identify particular jobs on which he saw these products in use. Plaintiff does, however, claim that he has seen these products. If plaintiff can provide no more detail, an order compelling more complete answers would prove unhelpful. Accordingly, the accompanying Order denies United States Gypsum's motion to compel.

### b. *Motion for Summary Judgment*

United States Gypsum's motion for summary judgment is grounded upon plaintiff's inability to identify an exposure to an asbestos product manufactured by United States Gypsum with sufficient particularity. However, answers to plaintiff's interrogatories may provide evidence sufficient to make that identification. Accordingly, United States Gypsum's motion is premature. The accompanying Order denies that motion.

### 6. *Claim Against Porter Hayden Company*

Porter Hayden distributes asbestos products in New Jersey. Also, Porter Hayden employed Mr. Kelly as an insulator when Mr. Kelly worked at the Forked River nuclear powerplant during the 1970's. Affidavit of C.W. Holterman ¶¶ 4, 5. Mr. Kelly has filed a claim against Porter Hayden under the New Jersey Workmen's Compensation Act for his asbestosis arising out of "36 years exposes [sic] to asbestos [at] various locations while performing work with insulation . . . ." Porter Hayden Motion for Summary Judgment, exh. A (Kelly's claim petition). Porter Hayden has moved for summary judgment on the ground that N.J.Stat.Ann. 34:15–8 (West 1952) bars plaintiff's claim against Porter Hayden in this case.

Plaintiff has responded to Porter Hayden's motion with two arguments. First, plaintiff contends that this court should apply the "dual capacity" doctrine to plaintiff's claim. That doctrine permits employees to avoid the workers' compensation bar to tort suits against their employers when their employers caused them injury in a role other than the role of employer. Second, plaintiff contends that a material issue of fact exists as to whether plaintiff was exposed to products distributed by Porter Hayden during a period when plaintiff did not work for Porter Hayden. Both plaintiff and Porter Hayden agree that New Jersey substantive law governs plaintiff's claim and Porter Hayden's workers' compensation defense.

### a. *Dual Capacity Doctrine*

The New Jersey Supreme Court has not explicitly adopted or rejected application of the "dual capacity" doctrine. In *Lyon v. Barrett*, 89 N.J. 294, 445 A.2d 1153 (1982), Justice Pollock described that doctrine as follows:

In the present case, the Appellate Division declined to adopt the "dual capacity" doctrine, under which an employer may be independently liable for damages in tort as well as workers' compensation benefits. The doctrine permits double liability when the employer is sued for breach of a duty arising out of a separate relationship to the employee. For example, dual capacity liability may exist when an employer who is a physician

commits malpractice while rendering treatment to an employee injured on the job or when the employer is a landowner who, by maintaining the work place in an unsafe condition, contributes to the happening of the accident. The thrust of the doctrine is to deny the shield of the immunity provisions of the workers' compensation statute to the landowner or treating physician who also happens to be the employer.... Other jurisdictions have divided on whether to impose liability on an employer for omissions or acts committed in an alternate capacity.... [W]e need not decide the validity of the dual capacity doctrine in this case.

89 N.J. at 299, 445 A.2d at 1155–1156 (citations omitted).

Plaintiff takes the position that although the New Jersey Supreme Court did not adopt the dual capacity doctrine in *Lyon*, it would adopt that doctrine in this case. Further, plaintiff would apply that doctrine in two ways. Plaintiff contends that he was exposed to asbestos while working for Porter Hayden both as a result of his own work and as a result of the work of others. Plaintiff contends that he was supplied with Porter Hayden products in the course of his work for Porter Hayden and that other craftsmen at Forked River, not employed by Porter Hayden, were using Porter Hayden products in a way which exposed plaintiff to asbestos fibers. Thus, plaintiff seeks to sue Porter Hayden in its capacity as a supplier to itself and in its capacity as a supplier to others working in plaintiff's vicinity at Forked River.

The New Jersey Superior Court's Appellate Division has considered the dual capacity doctrine and rejected it on at least two occasions. *Doe v. St. Michael's Medical Center*, 184 N.J.Super. 1, 445 A.2d 40 (App. Div.1982), was decided two months before *Lyon*. In *Doe*, a nurse brought an action against her employer for damages arising out of a sexual attack that she suffered while living in housing provided by the medical center. The Appellate Division first held that plaintiff's injury was compensable under the Workmen's Compensa-

tion Act. The court then rejected "plaintiff's contentions that her alleged status as a tenant allowed her to circumvent the policy of exclusive remedy." 184 N.J.Super. at 8, 445 A.2d at 44. The court observed that "the dual capacity doctrine has not met with wide approval, even when the employer clearly has independent obligations arising from his status as [land]owner.... Nor has the so-called 'dual capacity' doctrine thrived in New Jersey." *Id.* Therefore, the court transferred plaintiff's suit to the Division of Workers' Compensation.

Plaintiff suggests that *Doe*'s rejection of the dual capacity doctrine was vitiated by the Supreme Court's recognition of the doctrine in *Lyon*. I am not persuaded that the *Lyon* court did more than recognize that other jurisdictions accepted the dual capacity doctrine. Moreover, the Appellate Division has retained the view, even after *Lyon*, that the dual capacity doctrine does not apply in New Jersey.

In *Boyle v. Breme*, 187 N.J.Super. 129, 453 A.2d 1335 (App.Div.1982), *aff'd*, 93 N.J. 569, 461 A.2d 1164 (1983), the Appellate Division affirmed a grant of summary judgment for a defendant doctor and defendant Camden County. The county employed both plaintiff and the doctor. Plaintiff was injured in the course of her employment and chose to be treated by defendant doctor. The trial court held that the Workmen's Compensation Act barred both her suit against the doctor and her suit against the county. Judge Fritz, for the Appellate Division, affirmed, stating:

> As Judge King pointed out in *Doe v. St. Michael's Med Center, Newark*, 184 N.J. Super. 1, 9, 445 A.2d 40 (App.Div.1982), the dual capacity doctrine has not thrived in New Jersey. Our Supreme Court declined to undertake an extended consideration of the matter in *Lyon v. Barrett*, 89 N.J. 294, 445 A.2d 1153 (1982), holding in that case that Barrett the corporation, employer of plaintiff, was in fact a different entity from Barrett the landlord.

We are disinclined to explore the doctrine further. . . .

187 N.J.Super. at 132, 453 A.2d at 1337.

The Supreme Court affirmed "for the reasons stated by Judge Fritz in his opinion below." *Boyle v. Breme,* 93 N.J. 569, 570, 461 A.2d 1164, 1164 (1983) (per curiam). Moreover, Justice Handler's dissent in *Boyle* confirms the impression that the Supreme Court majority rejected the dual capacity doctrine; Justice Handler would "ascribe to a company physician a dual capacity and therefore determine that he can be held independently liable for medical malpractice in a third party action by an injured employee." 93 N.J. at 574, 461 A.2d at 1167.

▋ I therefore conclude that the New Jersey Supreme Court would not apply the dual capacity doctrine to Porter Hayden in this case. Porter Hayden cannot be liable for any injuries to plaintiff sustained as the result of his exposure to asbestos products supplied by Porter Hayden during the period when plaintiff was employed by Porter Hayden.[13]

b. *Exposure While Not Employed by Porter Hayden*

Plaintiff also contends that he has been exposed to asbestos products supplied by Porter Hayden during periods when he was not employed by Porter Hayden. Porter Hayden contends that plaintiff can adduce no evidence of such an exposure. Porter Hayden relies upon the affidavit of C.W. Holtermann, Porter Hayden's vice president, to show that Porter Hayden never performed any contracting work at a construction site where plaintiff worked except during periods when plaintiff worked for Porter Hayden. Plaintiff relies upon an affidavit of his counsel as to the content of plaintiff's deposition testimony to create a material issue of fact on this score.

In fact, Mr. Holtermann's affidavit does not state that at no time did Porter Hayden do contracting work at a site where plaintiff was working for another employer. Mr. Holtermann avers as follows:

4. I have reviewed John V. Kelly's work history, attached as Exhibit "A" to Plaintiff's Answers to National Gypsum's Interrogatories. Neither Porter Hayden Company, nor its predecessor, did any work at any of the job sites listed other than at the Forked River Nuclear Power Station which is located in New Jersey.

5. Plaintiff worked for Porter Hayden Company at the Forked River Nuclear Power Station which is located in the State of New Jersey.

Mr. Holtermann does not aver that plaintiff never worked for any other employer at Forked River during the period that Porter Hayden worked there as well.

Maryann Modesti, Esq., one of plaintiff's counsel, submitted an affidavit which avers:

At his deposition Mr. Kelly testified that he worked as an insulator at the Forked River Atomic Power Plant in New Jersey at various times between 1967 and 1980. During most of this time he was employed by Porter Hayden Company. Mr. Kelly testified that he also worked at that job location for another job contractor during the time that Porter Hayden was working at Forked River. As an insulator Mr. Kelly used asbestos products, including those manufactured by Johns-Manville, which created dust. He also worked with and around asbestos products which created dust. As set forth in paragraph 5, Porter Hayden was a distributor of Johns-Manville asbestos products in much of New Jersey.

As discussed above, Federal Rule of Civil Procedure 56(e) requires a party opposing a motion for summary judgment supported by affidavits to provide affidavits of his

---

**13.** Because New Jersey's workers' compensation bar applies not only to injuries for which plaintiff actually received compensation, but also to injuries for which plaintiff could have received compensation, N.J.Stat.Ann. 34:15–8 (West Supp.1984) precludes both plaintiff's asbestosis and cancer claims against Porter Hayden except those arising out of exposure while not employed by Porter Hayden.

own based upon personal knowledge. Ms. Modesti can provide an affidavit based upon her personal knowledge of what Mr. Kelly had to say at his deposition, but her affidavit is inadequate if offered for the truth of Mr. Kelly's testimony. However, at my request the parties have furnished the court with a transcript of Mr. Kelly's deposition testimony. That transcript did not become available until after plaintiff filed his response to Porter Hayden's motion for summary judgment. Accordingly, I will consider Ms. Modesti's affidavit as if it incorporated the pertinent portions of Mr. Kelly's deposition testimony.

■ Ms. Modesti's characterization of Mr. Kelly's testimony is entirely accurate. Mr. Kelly recalled working for other employers on a roofing job and on a "penetration" job at Forked River during periods when Porter Hayden was also working at the same site. Kelly Deposition at 103–109. Accordingly, a material issue of fact exists as to whether plaintiff was exposed to asbestos products supplied by Porter Hayden during periods when he was not employed by Porter Hayden.

For the foregoing reasons, the accompanying Order grants Porter Hayden Company's motion for summary judgment in part and denies it in part.

### 7. *Conclusion*

Through the good offices of Judge Weiner, this court has sought to coordinate the large number of asbestos cases filed in this district. This coordination has two aspects. First, Judge Weiner, in conjunction with counsel, has established a fairly routinized and enormously successful process for negotiating settlements in these actions. Most actions in Judge Weiner's asbestos program never reach trial. For those that do, Judge Weiner has undertaken to schedule all asbestos cases in a way which reduces or eliminates conflicting trial commitments for counsel, who by-and-large overlap in these actions. This trial schedule typically involves reassignment of each asbestos case from the judge to whom the case was originally assigned to a different judge for trial.

In light of the large number of asbestos actions filed in this district, neither Judge Weiner, the judge originally assigned the action, nor the judge assigned to a case for trial can be expected at an early date to determine whether an individual asbestos case will prove atypical in that it requires trial. Only counsel have access to this information in a timely fashion. Counsel consequently have a serious professional obligation to prepare in timely fashion for trial when a trial will be required. Preparation involves completion of discovery, resolution of purely legal disputes, and submission of pretrial memoranda.

Counsel might have prepared this case in a more timely fashion. During the week before trial, counsel not only filed numerous motions for summary judgment, they also filed several motions to compel answers to interrogatories. Discovery commenced in this case during early 1982. Had counsel taken their obligations to this court more seriously, they would presumably have been able to resolve preliminary discovery disputes sometime during the two-and-one-half years preceding trial. Had counsel obtained a reasonable discovery schedule, they would have raised their discovery disputes in a timely fashion; counsel would also have been able to present their motions for summary judgment at the proper time, rather than quite literally on the eve of trial.

Although this case has disrupted Judge Weiner's trial schedule, resolution of the pending motions now makes feasible an orderly preparation of this case. Much less of the case remains than existed on July 3. Plaintiff has claims against two defendants, United States Gypsum and Porter Hayden. Those claims only pertain to plaintiff's cancer and to his asbestosis to the extent that his asbestosis was caused by exposure to asbestos products after December 21, 1979. Plaintiff's claim against Porter Hayden arises solely out of exposure to asbestos products supplied by Porter Hayden to those working near plaintiff

during periods when Porter Hayden did not employ plaintiff. Counsel and the three remaining parties should devote significant efforts to the resolution of these claims without trial. In the event that a trial is required, however, the accompanying Order establishes a schedule for the completion of the ordered discovery and the submission of pretrial memoranda.

## SUPPLEMENTAL OPINION

### A.

In this diversity action, plaintiff John V. Kelly, a citizen of New Jersey, seeks to recover damages for two ailments—asbestosis and epidermoid cancer—allegedly caused him by asbestos products with which he came in contact during his long working life as an insulator. When the suit commenced nearly three years ago, on December 21, 1981, there were twenty-three defendants, all of which were alleged to be manufacturers and/or distributors of asbestos products. All of the defendants were corporations incorporated in states other than New Jersey; five of the defendants were Pennsylvania corporations with principal places of business in Pennsylvania; and one additional defendant, although incorporated in Delaware, had its principal place of business in Pennsylvania.

By the beginning of this month—August of 1984—only four defendants remained; none of the four was a Pennsylvania corporation. On August 7 I filed an Opinion and an accompanying Order which, *inter alia,* granted summary judgment in favor of two of the defendants. Thereafter, plaintiff and a third defendant settled. Now, with trial close at hand, this case has narrowed down to a suit between Mr. Kelly and United States Gypsum Company.

Among the rulings made on August 7 was one which granted in part a motion for summary judgment, in which all the then remaining defendants joined, predicated on statute of limitations grounds. Stated summarily, the rationale of the statute of limitations ruling was as follows:

1. Because (a) Mr. Kelly is a New Jersey citizen, (b) none of the remaining defendants is a Pennsylvania corporation, and (c) the employments in the course of which Mr. Kelly worked with the remaining defendants' products are alleged to have been at New Jersey work-sites, a Pennsylvania court would, under the choice-of-law principles spawned by *Griffith v. United Airlines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964), apply the substantive law of New Jersey to Mr. Kelly's claims against the remaining defendants. This is for the reason that New Jersey has a strong interest, and Pennsylvania—except in its role as forum—virtually none, in the policies governing the resolution of Mr. Kelly's claims.

2. Both Pennsylvania and New Jersey have two-year statutes of limitations in personal injury actions. And both states operate under the so-called "discovery rule" which starts the running of the limitation period when "the plaintiff has discovered his injury, or, in the exercise of reasonable diligence, should have discovered his injury." *Cathcart v. Keene Industrial Insulation,* 471 A.2d 493, 500 (Pa.Super.Ct. 1984); *accord Jarusewicz v. Johns-Manville Products Corp.,* 188 N.J.Super. 638, 458 A.2d 156, 158 (1983).

3. Since both states have two-year statutes of limitations, "discovery" prior to December 21, 1979 (two years before the December 21, 1981 commencement of this litigation) would, under either state's statute of limitations, have been fatal to the discovered claim. Mr. Kelly either knew or should have known that he probably had asbestosis in 1975, over four years before December 21, 1979. But Mr. Kelly could not be charged with knowledge of his alleged cancer until after December 21, 1979.

4. New Jersey law would, if applicable, define Mr. Kelly's asbestos and cancer claims as separate causes of action, each carrying its own two-year limitation period from the time of "discovery," notwithstanding that both claims can be said to originate in the same allegedly tortious acts of each of the remaining defendants. *Goodman v. Mead Johnson & Co.,* 534

F.2d 566, 574 (3d Cir.1976). By contrast, Pennsylvania law would, if applicable, regard the asbestos and cancer claims as dual manifestations of a single cause of action, the limitation period for which would have started to run on "discovery" of the earlier of the two pathologies. *Cathcart v. Keene Industrial Insulation, supra,* 471 A.2d 493, 507.

5. "Because ... New Jersey substantive law applies to plaintiff's claims against the remaining defendants, New Jersey's definitions of those claims for the purpose of applying its statute of limitations apply as well." *Kelly v. Johns-Manville Corp.,* 590 F.Supp. 1089, 1096 (E.D.Pa.1984).

6. Wherefore, the motion for summary judgment on statute of limitations grounds was, in the August 7 Opinion and Order, *granted* with respect to asbestosis occasioned by exposure to asbestos products on or before December 21, 1979, and in other respects the motion was *denied.* The effective meaning of the ruling is that the cancer claim may be pursued but that the asbestosis claim is, for all practical purposes, foreclosed.

### B.

The occasion for filing this Supplemental Opinion is that the foregoing statute of limitations analysis was, in one respect, flawed. The right result was reached, but in the rationale set out in the August 7 Opinion a significant—and, indeed, essential—analytic ingredient was missing.

▮ The missing ingredient was Pennsylvania's "borrowing statute," 42 Pa. Cons.Stat.Ann. § 5521 (Purdon 1981):

(b) General rule.—The period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim.

(c) Definition.—As used in this section "claim" means any right of action which may be asserted in a civil action or proceeding and includes, but is not limited to, a right of action created by statute.[1]

In essence, section 5521 provides that "a claim accruing outside this Commonwealth" may not be sued on in a Pennsylvania court[2] if time-barred either by the applicable statute of limitations of the place where the claim accrued or by the applicable Pennsylvania statute of limitations.[3]

▮ The first inquiry is whether section 5521 applies to Mr. Kelly's claims. Section 5521 only applies if Mr. Kelly has a claim which "accrued" outside of Pennsylvania. As Judge Hastie put it, speaking of the borrowing statute which preceded section 5521: "We think the concept of when a cause arises and the concept of where a cause arises, both used to aid in the application of statutes of limitations, are *in pari materia.* In other words, the cause arises where as well as when the final significant event that is essential to a suable claim occurs." *Mack Trucks, Inc. v. Bendix-Westinghouse Automotive Air Brake Co.,* 372 F.2d 18, 21 (3d Cir.1966).[4]

---

1. This thick slice of Pennsylvania law was not mentioned by any of the parties in their submissions on the statute of limitations question.

2. Except to the extent that federal law, including federal rules of procedure, requires otherwise, this federal court sitting in Pennsylvania must of course follow the law applied in the state courts of Pennsylvania. 28 U.S.C. § 1652. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1943).

3. "All of the borrowing legislation has been construed to present a double hurdle for plaintiffs. If the forum's limitation period has run, the claim will not be heard; and if the foreign time period has run although the forum's has not, the claim will be barred." D. Vernon, *Conflict of Laws* 3–15 (2d ed. 1982).

4. The statute construed in *Mack Trucks,* while different in wording and structure from Section 5521, is "similar" in content, *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 659 n. 4 (3d Cir.1980)—so similar that, like Judge Becker, "we do not perceive any difference between the

In order to determine whether the final significant event that is essential to a suable claim occurred outside of Pennsylvania, one must determine what significant events are essential to that claim. Two states' laws might arguably provide that definition. One might choose to define the claim under the substantive law of Pennsylvania. One might also choose to define the claim under the substantive law of another state if the analysis dictated by *Griffith* selects a state other than Pennsylvania as the state whose substantive law should govern the controversy.[5] In my view, the latter is the better option.

■■■ *Griffith* mandates the application to a claim of the substantive law of the state with the most significant interest in the transaction. By hypothesis, then, if *Griffith* mandates the application of a body of substantive law other than that of Pennsylvania, Pennsylvania has a more attenuated interest in the claim than does some other state.[6] To give weight to Pennsylvania's definition of the claim for purposes of applying section 5521 would be to use the borrowing statute to import Pennsylvania's substantive law into a case in which Pennsylvania has little interest. This seems to me inappropriate. The purpose of a statute of limitations is to screen out what the forum deems to be stale claims. Its purpose is not to shape the substantive law of the claims to be entertained by the forum.

I have previously determined that *Griffith* mandates the application of New Jersey law to Mr. Kelly's claims against the remaining defendants. New Jersey would separate Mr. Kelly's complaint into two claims: one for injury in the form of asbes-

tosis and one for injury in the form of cancer. Mr. Kelly's asbestosis claim accrued when he knew or should have known that he had asbestosis. His cancer claim accrued when he knew or should have known that he had cancer. No party contends that Mr. Kelly was in a state other than New Jersey, where he resides, when he discovered, or should have discovered, either his asbestosis or his cancer. Accordingly, section 5521 applies to both Mr. Kelly's cancer claim and his asbestosis claim.

Thus, pursuant to section 5521, the first question to be addressed is whether Mr. Kelly's claims are barred by the "period of limitation ... provided or prescribed by the law of" New Jersey—i.e. "by the law of the place where the claim accrued." To answer this question, as Judge Adams has made clear, a Pennsylvania court must "look to the law of the state where the cause of action arose to determine not only the prescribed period of limitations but also the point at which the statute begins to run." *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 660 (3d Cir.1980). As noted in part A of this Supplemental Opinion, the relevant New Jersey statute of limitations is two years and commences to run at the time of discovery. As applied to the facts in this case, in accordance with our Court of Appeals' teaching in *Goodman v. Mead Johnson & Co.*, 534 F.2d at 574, the New Jersey rule means that Mr. Kelly's cancer claim is timely and his asbestosis claim is not.[7]

Pursuant to section 5521, the second question to be addressed is whether Mr. Kelly's cancer claim, viable under New Jersey law, is nonetheless barred by "[t]he period of limitation ... provided or pre-

---

legal effect of the two statutes ...." *Hafer v. Firestone Tire & Rubber Co.*, 523 F.Supp. 1216, 1217 n. 1 (E.D.Pa.1981).

5. One cannot, of course, choose to use the law of the state where the claim accrued because that state's identity is unknown until the claim is defined.

6. Section 5521, as drafted, suggests that the legislature assumed that *Griffith* will always mandate application of the substantive law of the state where the claim accrued. Of course, *Grif-*

*fith* may mandate application of that state's substantive law, Pennsylvania's substantive law, or some third state's substantive law.

7. To be absolutely precise, Mr. Kelly may still have a theoretically viable claim for incremental asbestosis contracted after December 21, 1979. See, *supra,* part A, paragraph 6. Whether assertion of such a theoretical claim could be successfully defended against on assumption of risk grounds is not an issue currently before this court.

scribed ... by the law of this Commonwealth." As already noted, the relevant Pennsylvania statute of limitations is, like New Jersey's, two years. And so Mr. Kelly's cancer claim would appear, at first blush, timely under Pennsylvania law as well.

However, under the rule announced by the Pennsylvania Superior Court in *Cathcart v. Keene Industrial Insulation*, 471 A.2d at 507, a Pennsylvania court would relate Mr. Kelly's cancer claim back to the time-barred asbestosis claim and dismiss both, if this were a Pennsylvania cause of action. Does this mean that the Pennsylvania statute of limitations bars Mr. Kelly from pursuing his cancer claim, which is recognized by New Jersey as an independent cause of action?

The answer is in the negative for the same reason that Pennsylvania law does not define Mr. Kelly's claim for purposes of determining "when the final significant event that is essential to a suable claim occurs." *Mack*, 372 F.2d at 21. To allow the Pennsylvania statute of limitations to veto the decision of the *Griffith* state to recognize two diseases emanating from a single tort as separate causes of action would be to make substantive Pennsylvania tort law in the guise of procedural housekeeping. Pennsylvania of course has authority, in shaping the substantive tort law to be applied to law suits in which Pennsylvania concludes it has a significant interest, to foreclose suits in Pennsylvania courts. But determining whether Pennsylvania, or another jurisdiction, has the greater interest in a particular law suit—and, hence, which jurisdiction's substantive law is to be applied—is the very choice of law process controlled by *Griffith* principles. This court has already determined that a Pennsylvania court, following *Griffith*, would find the remainder of Mr. Kelly's law suit to be controlled by the substantive law of New Jersey. It follows that Mr. Kelly's cancer claim—"discovery" of which preceded the institution of this law suit by less than the two years permitted by Pennsylvania's time limitation on personal injury actions—is not time-barred by reason of Pennsylvania's statute of limitations.[8]

 Since Mr. Kelly's cancer claim—as defined under New Jersey substantive law—is not time-barred in New Jersey or in Pennsylvania, Mr. Kelly may go forward with his claim in this court against the last remaining defendant, United States Gypsum Company.

Accordingly, the Order filed on August 7 requires no modification.

---

8. Of course, Mr. Kelly could not bring a New Jersey claim in a Pennsylvania court if Pennsylvania could reasonably regard the New Jersey claim as repugnant to an important aspect of Pennsylvania public policy and if Pennsylvania did so regard the New Jersey claim. *Cf. Hughes v. Fetter*, 341 U.S. 609, 71 S.Ct. 980, 95 L.Ed. 1212 (1951). Defendants made no suggestion that New Jersey's characterization of Mr. Kelly's claims, while different from Pennsylvania's, substantially offends this state's public policy.